UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| STEPHEN DONNELLY and JENNIFER HIRNI, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>MENU FOODS, INC., a New Jersey corporation, MENU FOODS INCOME FUND, MENU FOODS HOLDINGS, INC., and MENU FOODS MIDWEST CORPORATION, a Delaware corporation, CHEMNUTRA INC., a Delaware corporation, CHEMNUTRA LLC, XUZHOU ANYING BIOLOGIC TECHNOLOGY DEVELOPMENT COMPANY LTD., SUZHOU TEXTILE IMPORT AND EXPORT COMPANY,<br><br>        Defendants. | Case No. <br><br>**CLASS ACTION COMPLAINT**<br><br>/TORRES<br><br>**JURY TRIAL DEMANDED**<br><br> |

    Plaintiffs Stephen Donnelly and Jennifer Hirni ("Plaintiffs"), individually and on behalf of all others similarly situated, allege by and through their attorneys, upon information and belief, as follows:

### NATURE OF CASE

    1. Plaintiffs bring this class action on behalf of themselves and a class of consumers and entities who purchased brands of "cuts and gravy style" dog and cat food manufactured by Menu Foods Income Fund; Menu Foods Holdings, Inc; Menu Foods, Inc., and Menu Foods Midwest Corporation, using the wheat gluten ingredient supplied by Xuzhou Anying Biologic Technology Development Company Ltd. and exported by Suzhou Textile Import and Export Company, and supplied by ChemNutra, Inc., and ChemNutra, LLC ("Defendants' Pet Food Products") that caused pets to suffer severe illness or death. Pet owners, believing Defendants' Pet Food Products to be safe for pet consumption, incurred substantial expenses relating to the purchase of the pet food and to the veterinary monitoring and treatment

that became necessary after their pets consumed Defendants' Pet Food Products. Such expenses were even more extreme for those pet owners whose pets became terminally ill after consuming Defendants' Pet Food Products. Such costs arose and were exacerbated by the undue amount of time taken by Defendants to announce the dangers associated with its dog and cat foods. Although Defendants knew that pet illnesses and deaths could be related to their Pet Food Products, Defendants waited for nearly a month before telling the public and the Food and Drug Administration (FDA) that it was recalling its products. Defendants' lethal Pet Food Products, and the companies' excessive delay in warning consumers and regulatory agencies as to its dangers, resulted in significant financial loss to thousands of pet owners.

## JURISDICTION AND VENUE

1. The Court has original jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d)(2).

2. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(a)(1) because Plaintiff resides in this judicial district. Venue is also proper pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

3. The members of the putative Class have suffered aggregate damages exceeding $5,000,000, exclusive of interest and costs.

## PARTIES

4. Plaintiff Jennifer Hirni is a resident of Davenport, Florida.

5. Plaintiff Stephen Donnelly is a resident of Miami Beach, Florida.

6. Defendant Menu Foods Income Fund is a Canadian company with its principal executive offices located at 8 Falconer Drive, Streetsville, Ontario, Canada L5N 1B1.

7. Defendant Menu Foods Holdings, Inc. is a Delaware corporation and may be served through its registered agent for service, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington Delaware.

8. Defendant Menu Foods, Inc. is a New Jersey corporation with its principal executive

offices located at 9130 Griffith Morgan Lane, Pennsauken, New Jersey 08110. Menu Foods, Inc. is a wholly-owned subsidiary of Menu Foods Holdings, Inc.

9. Defendant Menu Foods Midwest Corporation is a Delaware corporation with its principal executive offices located at P.O. Box 1046, 1400 East Logan Avenue, Emporia, Kansas 66801. Menu Foods Midwest Corporation is a wholly-owned subsidiary of Menu Foods Holdings, Inc.

10. Unless otherwise stated, Defendants Menu Foods Income Fund, Menu Foods Holdings, Inc, Menu Foods, Inc., and Menu Foods Midwest Corporation are collectively referenced as "Menu Foods."

11. Defendant ChemNutra Inc. is a Delaware corporation that maintains its principal place of business in Las Vegas, Nevada.

12. Defendant ChemNutra LLC is a Chinese company with its principal executive offices located at Hangzhou, hz, Zhejiang, China 310030.

13. Defendant Xuzhou Anying Biologic Technology Development Company Ltd. is a Chinese company with its principal executive offices located at Wangdigan Industrial Zone, Peixian, CN-32, China 221623.

14. Defendant Suzhou Textile Import and Export Company is a Chinese company with its principal executive offices located at ZhuHui Road 121#, CangLang District, SuZhou, Jiangsu, China 215006.

15. Unless otherwise stated, Defendants Menu Foods Income Fund, Menu Foods Holdings, Inc., Menu Foods, Inc., Menu Foods Midwest Corporation, ChemNutra Inc., ChemNutra LLC, Xuzhou Anying Biologic Technology Development Company, Ltd., and Suzhou Textile Import and Export Company are collectively referenced as "Defendants."

16. At all times herein mentioned, Defendants were the agents, principals, employees, servants, partners, joint venturers, and representatives of each other. In doing the acts hereinafter alleged, they each were acting within the scope and course of their authority as such agents, principals, employees, servants, partners, joint venturers, and representatives, and were acting

with the permission and consent of the other Defendant.

## FACTUAL ALLEGATIONS

17. Menu Foods manufactures and sells pet food internationally and are the biggest supplier of pet food in North America.

18. Menu Foods uses in its pet food product wheat gluten supplied by Xuzhou, which is exported by Suzhou, and wheat gluten supplied by ChemNutra Inc. and ChemNutra LLC. Menu Foods sells pet food under nearly 100 different brand names, some of which are the most popular brands of dog and cat food in the industry – *e.g.* Iams, Eukanuba, and Science Diet, among others.

19. Menu Foods sells their brands internationally and in some of the largest major retail chains in the United States, such as Wal-Mart, Safeway, Kroger, PetSmart and Meijer.

20. On March 16, 2007, Menu Foods, in conjunction with the Food and Drug Administration (FDA), announced a massive immediate recall of approximately 60 million containers of "cuts and gravy" pet food (pet food consisting of pieces of meat in gravy) throughout the United States based on widespread reports of pet illness and death, mostly related to kidney failure. The recall covers all "cuts and gravy" wet pet food produced and distributed by Menu Foods, including over ninety different brands of dog and cat food. Some of the brands recalled include, Iams, Eukanuba, Best Choice, Paws, and Nutro Max. Menu Foods' recall is the largest pet food recall in United States history.

21. However, Menu Foods waited an excessive period of time before deciding to recall its harmful and lethal products. Menu Foods first started receiving complaints of pet illnesses and deaths as early as late-February, almost a full month before deciding to recall its products. *See, e.g.,* CBSNews.com, *Pet Food Co. Knew of Problem Last Month*, March 20, 2007, *at* http://www.cbsnews.com/stories/2007/03/20/national/main2587087.shtml (last viewed March 22, 2007). Rather than announcing its products could be harmful to pets as soon as it learned of pet illnesses and deaths, Menu Foods decided to conduct its own testing. Menu Foods conducted tests involving over 50 animals to observe reactions to its pet foods. Approximately one in six of

the animals tested died. Yet, Menu Foods again waited until as many as seven test subjects died after eating its pet food before finally submitting its findings to the FDA and deciding that a recall and announcement to the public would be necessary.

22. Due in no small part to this unnecessary and protracted delay, as of March 21, 2007 there have been at least seventy-two reported pet deaths from kidney failure nationwide and additional deaths continue to be reported by the hour. One source indicated that 1,715 dogs and cats were either sick or dead as a result of the recalled food products. *See* http://www.petconnection.com/blog/ (last viewed March 22, 2007).

23. Pet owners purchased Defendants' Pet Food Products believing them to be safe for pet consumption and beneficial to their pets. However, the "cuts and gravy" style pet food that pet owners across the nation have fed their pets has proved to be toxic, causing renal failure in cats and dogs as well as physical disorders such as dehydration, diarrhea, loss of appetite, increased thirst, lethargy, and vomiting.

24. Pet owners have incurred substantial expenses relating both to the purchase of Defendants' Pet Food Products and from the medical costs associated with monitoring and treating pets who have consumed, or were thought to have consumed, Defendants' contaminated Pet Food Products. Indeed, several pet owners have accrued veterinary bills that have climbed into the several thousands of dollars. Furthermore, for those pet owners whose pets became terminally ill, they were forced to incur additional costs relating to their pets death, such as euthanizing and, for some, burying or cremating their pet.

25. Currently, Menu Foods still has not identified the cause of the food toxicity. However, aminopterin, a substance found in rat poisons, and melamine, a substance used in making plastics, were recently discovered in the recalled foods.

26. In addition, pet owners who have become increasingly concerned about their pet's health after learning of the recall have received little to no relief from Menu Foods. Menu Foods has failed to manage the high volume of incoming complaints. Since instituting the recall, pet owners have been largely unable to reach Menu Foods' customer service representatives, often

encountering busy signals or voicemail messages. *See, e.g.*, Thejournalnews.com, *Pet Owners Growling over Food Recall*, March 20, 2007, *at* http://www.thejournalnews.com/apps/pbcs.dll/article?AID=/20070320/BUSINESS01/703200345/1066 (last viewed March 22, 2007). To be sure, Menu Foods have been criticized for not being cooperative with customers, for not getting helpful information out to the public sooner and for failing to "get control of the crisis . . . employ[ing] a bunker mentality in times of trouble." Joseph R. Perone, The Star-Ledger, *Menu Foods Fails Test in Crisis Management*, March 21, 2007, *available at* http://www.nj.com/starledger/stories/index.ssf?/base/business-6/117445554784980.xml&coll=1 (last viewed March 23, 2007).

27. Since the recall, Menu Foods has received scores of complaints and questions from consumers who have purchased its contaminated Pet Food Products and from those whose pets have become ill or died after consuming those products.

28. The complaints found throughout the Internet and in many of the news stories mentioned above each contain the same common theme of consumers who unwittingly purchased Defendants' Pet Food Products and who were forced to take their pets to veterinarians for medical treatment after their pets became extremely, and sometimes terminally ill.

29. Plaintiff Jennifer Hirni purchased and fed Iams brand wet pet food to her cats Sable and Kiki. Iams is a brand of cat food recalled by Menu Foods that was regularly fed to Ms. Hirni's cats.

30. After eating the cat food on March 4, 2007, Sable became noticeably ill. Sable began throwing up violently and became severely dehydrated. In response, Ms. Hirni admitted Sable to a veterinary hospital for treatment, where the veterinarian verified Sable's symptoms. The veterinarian determined that Sable was far too ill to be treated and recommended Sable be euthanized. To avoid further pain and discomfort to Sable, Ms. Hirni followed the veterinarian's advice. Sable died on March 6, 2007. During a visit to a veterinarian on October 27, 2006, Sable was found to be in good health and blood work revealed that her kidney readings were normal.

31. Ms. Hirni's other cat, Kiki, demonstrated symptoms similar to Sable's after eating Iams cat food. She immediately took Kiki to the veterinarian for care where Kiki was diagnosed with kidney failure. After receiving treated and being re-hydrated, Kiki was released from the hospital and allowed to return home. However, Ms. Hirni has had to continue treating Kiki at home by administering fluids to her intravenously. Kiki will need to visit the veterinarian again within the next few weeks for additional monitoring and treatment, as well as feed Kiki costly medicated cat food for the rest of Kiki's life.

32. Ms. Hirni's third cat, Oucha Bucha, was recently submitted for the first of several veterinary appointments to ensure she had not consumed, nor was affected by, the contaminated pet food.

33. Because Sable was euthanized soon after being admitted to the veterinarian, Ms. Hirni's expenses for Sable amounted to $40. However, the cost of Kiki's diagnosis, treatment and monitoring is $962, an amount expected to increase as Ms. Hirni admits Kiki for follow-up visits with the veterinarian. Ms. Hirni has so far spent $119 to monitor Oucha Bucha.

34. Plaintiff Stephen Donnelly purchased a brand of pet food recently recalled by Menu Foods and fed the food product to his cat, Gizmo.

35. Soon after consuming the recalled cat food, Gizmo became severely ill. Mr. Donnelly admitted Gizmo to a veterinarian who diagnosed Gizmo as having kidney failure. Over a week after first ingesting the recalled cat food, Gizmo is still very ill. He is on a regimen of medications and requires ongoing veterinary treatment.

36. Fearing his other cat, Boo, may have also ingested the same food, Mr. Donnelly took precautions by submitting Boo to a veterinarian. Tests for Boo so far have indicated that he is in good health.

37. Mr. Donnelly incurred over $200 in costs just to ensure Boo was not affected by the recalled food. However, medical diagnosis, treatment and monitoring related to Gizmo already exceeds $2000.

## CLASS ACTION ALLEGATIONS

38. Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b) on behalf of himself and all others similarly situated as members of the following class (the "Class"): All Florida persons and entities that purchased Defendants' Pet Food Products.

39. Subject to additional information obtained through further investigation and discovery, the Class definition may be expanded or narrowed by amendment or amended complaint. Specifically excluded are Defendants, their officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers, or entities controlled by Defendants, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendants and/or their officers and/or directors, or any of them; the Judge assigned to this action, and any member of the Judge's immediate family.

40. **Numerosity**. The members of the Class are so numerous that their individual joinder is impracticable. Plaintiffs are informed and believe, and on that basis allege, that the proposed class contains tens of thousands of members. The precise number of Class members is unknown to Plaintiffs. The true number of Class members are known by Defendants, however, and thus, may be notified of the pendency of this action by first class mail, electronic mail, and by published notice.

41. **Existence and Predominance of Common Questions of Law and Fact**. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

    a.    Whether Defendants intentionally, recklessly or negligently authorized injurious pet food to enter the market;

    b.    Whether Defendants failed to properly test their "cuts and gravy" style dog and

    cat food before market entry of such food;

 c. Whether Defendants intentionally, recklessly or negligently delayed in instituting a recall of their "cuts and gravy" style dog and cat food;

 d. Whether Defendants' recall is adequate and properly notifies potentially affected consumers;

 e. Whether Defendants have been unjustly enriched as a result of their conduct, as alleged herein; and

 f. Whether Plaintiffs and members of the Class have sustained damages as a result of Defendants' conduct, and, if so, what is the appropriate measure of damages.

 42. **Typicality**. Plaintiffs' claims are typical of the claims of the members of the Class in that Plaintiff and each member of the Class purchased Defendants' Pet Food Products.

 43. **Adequacy of Representation**. Plaintiffs will fairly and adequately protect the interests of the members of the Class. Plaintiffs have retained counsel experienced in complex consumer class action litigation, and Plaintiffs intend to prosecute this action vigorously. Plaintiffs have no adverse or antagonistic interests to those of the Class.

 44. **Superiority**. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against the Defendants. It would thus be virtually impossible for Class, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

45. In the alternative, the Class may be certified because:

   a. the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for the Defendants;

   b. the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

   c. Defendants have acted or refused to act on grounds generally applicable to the Class thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

46. Adequate notice can be given to Class members directly using information maintained in Defendants' records, or through publication notice.

47. Defendants benefited from the sale of their Pet Food Products to Plaintiffs and the Class. The benefit to Defendants can be identified from the sale of such pet food to Plaintiffs and the Class and that such monies can be restored to Plaintiffs and the Class. Such monies are the property of the Plaintiffs and the Class. All or a portion of this benefit retained by Defendants is money in which Plaintiffs and the Class have an ownership interest. Plaintiffs and the Class were injured and lost money as a result of Defendants' unfair, unlawful and fraudulent business practices described herein.

## FIRST CLAIM FOR RELIEF
[Negligence]

48. Plaintiffs assert this claim against each and every Defendant on behalf of themselves and the Class.

49. Defendants owed a duty to Plaintiffs and the Class to provide pet food safe and suitable for pet consumption.

50. Through their failure to exercise due care, Defendants were negligent in manufacturing, distributing, marketing and selling pet food to Plaintiffs and the Class.

51. Defendants failed to implement adequate quality control and adequate testing of their Pet Food Products that they introduced into the stream of commerce for sale to Plaintiffs and the Class and for consumption by their pets.

52. Defendants knew, or should have known, that their Pet Food Products, as described above, present an unreasonable and unacceptable risk of injury or death to pets, and would result in foreseeable and avoidable damage.

53. The losses and damages described herein were foreseeable and avoidable.

54. Defendants' negligence proximately caused the losses and damages to Plaintiffs and the Class.

## SECOND CLAIM FOR RELIEF
### [For Unjust Enrichment]

55. Plaintiffs hereby reallege and incorporate by reference all paragraphs previously alleged herein. Plaintiff asserts this claim against each and every Defendant on behalf of themselves and the Class.

56. Defendants have received, and continue to receive, a benefit at the expense of Plaintiffs and members of the Class. Defendants have knowledge of this benefit.

57. Defendants have charged and collected from consumers, including Plaintiffs and members of the Class, money for dog and cat food that endangers the lives of their pets. Defendants thus have received benefits that they have unjustly retained at the expense of Plaintiffs and members of the Class.

58. As a direct and proximate result of Defendants' unlawful acts and conduct, Plaintiffs and members of the Class were deprived of the use of their monies that was unlawfully charged and collected by Defendants, and are therefore entitled to restoration of their monies.

## THIRD CLAIM FOR RELIEF
### [Breach Of Express Warranty]

59. Plaintiffs hereby reallege and incorporate by reference all paragraphs previously alleged herein. Plaintiffs assert this claim against each and every Defendant on behalf of themselves and the Class.

60. Defendants expressly warranted that their "cuts and gravy" style pet food was suitable and safe for pet consumption.

61. Defendants also expressly warranted that "it manufacture[s] the private-label wet pet-food industry's most comprehensive product program with the highest standards of quality."

62. Plaintiffs and the Class were induced by Defendants' marketing, advertising, promotion and labeling of the pet food as suitable "food" to rely upon such express warranty, and, in fact, relied upon the untrue warranty in purchasing the recalled pet food and feeding it to their pets.

63. Plaintiffs and the Class were damaged as a proximate result of Defendants' breach of their express warranty.

## FOURTH CLAIM FOR RELIEF
### [Strict Product Liability]

64. Plaintiffs hereby reallege and incorporate by reference all paragraphs previously alleged herein. Plaintiffs assert this claim against each and every Defendant on behalf of themselves and the Class.

65. Defendants produced, manufactured and/or distributed Pet Food Products in a condition which rendered it dangerous due to its propensity to cause illness and/or death to pets that consumed the food product.

66. The subject pet food products produced, manufactured and/or distributed by Defendants were defective in design and/or formulation in that, when it left the hands of Defendants, the foreseeable risks exceeded the benefits associated with the design and/or formulation.

67. Alternatively, the subject products manufactured and/or supplied by Defendants were defective in design and/or formulation in that they were more dangerous than an ordinary

consumer would expect when used in its intended or reasonably foreseeable manner.

68. Defendants' products were expected to and reached Plaintiffs without substantial change in condition.

69. The products produced, manufactured and/or distributed by Defendants were defective and unreasonably dangerous when they left the possession of Defendants in that they contained warnings insufficient to alert consumers, including Plaintiffs, of the dangerous risks and reactions associated with the subject products, notwithstanding Defendants' knowledge of such risks and reactions.

70. The products produced, manufactured and/or distributed by Defendants were defective due to inadequate warning and/or inadequate testing and study, inadequate reporting regarding the results of these tests and studies, and inadequate warning or instruction to Plaintiffs and the public after Defendants knew or should have known of the risk of injury from the products.

71. By engaging in the aforesaid conduct, Defendants are strictly liable to Plaintiffs.

72. As a direct and proximate result of the defective condition of the products as produced, manufactured and/or distributed by Defendants, and of the negligence, carelessness, other wrongdoing and actions of Defendants described herein, Plaintiffs suffered damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment against Defendants as follows:

1. For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiffs and their counsel of record to represent the Class;

2. For restitution, disgorgement and/or other equitable relief as the Court deems proper;

3. For compensatory damages sustained by Plaintiffs and all others similarly situated as a result of Defendants' unlawful acts and conduct;

4. For a permanent injunction prohibiting Defendants from engaging in the conduct and practices complained of herein;

5. For pre-judgment and post-judgment interest;

6. For reasonable attorneys' fees and costs of suit, including expert witness fees;

7. For the establishment of a fund for the monitoring, medical evaluation and treatment of the pets of Plaintiffs and the Class. Such funds would also be used to provide notice to Plaintiffs and the Class that their pets require medical monitoring, as well as information to veterinarians to assist them in identifying and treating pet illnesses related to pet food contamination; and

8. For such other and further relief as this Court may deem just and proper.

## JURY DEMAND

To the full extent available, Plaintiffs demand a trial by jury.

Dated: April 6, 2007

SHEPHERD, FINKELMAN, MILLER & SHAH, LLC

By _____
Scott R. Shepherd
Fl. Bar No. 069655
4400 North Federal Highway
Lighthouse Point, FL 33064
Telephone: 954/943-9191
Facsimile: 954/943-9173
sshepherd@sfmslaw.com

Natalie Finkelman Bennett
**SHEPHERD, FINKELMAN, MILLER
& SHAH, LLC**
35 E. State Street
Media, PA 19063
Telephone: 610/891-9880
Facsimile: 610-891-9883

Mark J. Tamblyn
**WEXLER TORISEVA WALLACE LLP**
1610 Arden Way, Suite 290
Sacramento, California 95815
Telephone: (916) 568-1100
Facsimile: (916) 568-7890

Kenneth A. Wexler
**WEXLER TORISEVA WALLACE LLP**
One North LaSalle St., Suite 2000
Chicago, Illinois 60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Stuart C. Talley
**KERSHAW, CUTTER, & RATINOFF, LLP**
980 9th Street, 19th Floor
Sacramento, California 95814
Telephone: (916) 448-9800
Facsimile: (916) 669-4499

Renae Steiner
**GUSTAFSON GLUEK**
650 Northstar East
608 Second Avenue South
Minneapolis, MN 55402
Telephone: 612/333-8844
Facsimile: 612/339-6622

Lawrence E. Feldman
**LAWRENCE E. FELDMAN & ASSOCIATES**
432 Tulpechocken Avenue
Elkins Park, PA 19027
Telephone: 215/885-3302
Facsimile: 215/885-3303

*Attorneys for Plaintiffs and the Class*

%JS 44 (Rev. 11/05)

# CIVIL COVER SHEET

**07-20955**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)   **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

### I. (a) PLAINTIFFS
STEPHEN DONNELLY and JENNIFER HIRNI, On Behalf of Themselves and All Others Similarly Situated,

(b) County of Residence of First Listed Plaintiff: Dade Cty, FL
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) Attorney's (Firm Name, Address, and Telephone Number)
Scott R. Shepherd, Shepherd, Finkelman, Miller & Shah, LLC, 4400 North Federal Highway, Lighthouse Point, FL 33064; tel. 954-943-9191

### DEFENDANTS
MENU FOODS INC, et al.
(See attached page for further defendants)

**CIV-LENARD**

County of Residence of First Listed Defendant: Camden Cty, NJ
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

**TORRES**

Attorneys (If Known)

(d) Check County Where Action Arose: ✓ MIAMI-DADE ☐ MONROE ☐ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE HIGHLANDS

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)
☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
✓ 4 Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ✓ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ✓ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

Miami- 07CV20955 JAL TORRES

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ✓ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

### V. ORIGIN (Place an "X" in One Box Only)
✓ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed- (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

### VI. RELATED/RE-FILED CASE(S).
(See instructions second page):
a) Re-filed Case ☐ YES ✓ NO    b) Related Cases ☐ YES ✓ NO
JUDGE                              DOCKET NUMBER

### VII. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (**Do not cite jurisdictional statutes unless diversity**):
28 U.S.C. 1332(d)(2). Complaint against defendants in connection with sale of tainted pet food

LENGTH OF TRIAL via 10 days estimated (for both sides to try entire case)

### VIII. REQUESTED IN COMPLAINT:
✓ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ✓ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE
SIGNATURE OF ATTORNEY OF RECORD
DATE 4-6-07

FOR OFFICE USE ONLY
AMOUNT $350.00  RECEIPT # 957775  IFP

04/10/07

*Donnelly, et al. v. Menu Foods, Inc., et al.*

**List of Further Defendants:**

1. Menu Foods Income Fund

2. Menu Foods Holdings, Inc.

3. Menu Foods Midwest Corporation

4. Chemnutra, Inc.

5. Chemnutra, LLC

6. Xuzhou Anying Biologic Technology Development Company Ltd.

7. Suzhou Textile Import and Export Company